## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **CORWIN TELTSCHIK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WILLIAMS & JENSEN, PLLC, et al.,**<br><br>**Defendants.** |

**Civil Action 08-00089 (HHK)**

### MEMORANDUM OPINION AND ORDER

Corwin Teltschik, former Treasurer of Americans for a Republican Majority Political Action Committee ("ARMPAC"), brings this action against Williams & Jensen, PLLC, Williams & Jensen, P.C., (collectively "Williams & Jensen"), and current and former Williams & Jensen attorneys, Barbara Wixon Bonfiglio, Meredith Kelley and Robert Martinez. This suit arises from a complaint that was filed with the Federal Election Commission ("FEC") against ARMPAC and Teltschik, as ARMPAC's Treasurer, that resulted in a Conciliation Agreement allegedly without his knowledge or consent. Teltschik asserts causes of action for breach of fiduciary duty, negligence, libel, misappropriation of name and reputation, tortious interference with contracts, tortious interference with prospective economic advantage, and business disparagement.

Before the Court are "Defendants' Motion for Summary Judgment" [#39], defendants' "Motion to Strike Teltschik's Unpled Theories" [#53], Teltschik's "Motion to Amend Pleadings" [#52], and "Plaintiff's Motion to Strike the Declarations of Barbara Wixon Bonfiglio" [#50]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the Court concludes that defendants' motion for summary judgment and defendants' motion to strike

should be granted in part and denied in part, and that Teltschik's motion to amend his complaint

and Teltschik's motion to strike should be denied.

## I.  BACKGROUND

The material facts of this case, unless it is otherwise indicated, are as follows.  In 1995,

Teltschik, a Texas-based lawyer, became Treasurer of ARMPAC, a political action committee

formed to assist Republican candidates for election to the U.S. House of Representatives with

activities such as the solicitation of political contributions.  Teltschik did not have any familiarity

with federal election laws and regulations.  He asserts that he only accepted the position as

Treasurer for ARMPAC after being informed that Williams & Jensen, a law firm based in the

District of Columbia, would handle all of ARMPAC's financial affairs, prepare and file all

necessary paperwork with the FEC, and ensure that ARMPAC complied with all federal election

laws.

Before accepting the Treasurer position, Teltschik asked Barbara Wixon Bonfiglio, a

lawyer at Williams & Jensen and the Assistant Treasurer of ARMPAC, what his obligations

under the law would be once he became Treasurer.  According to Teltschik, Bonfiglio informed

him that he would not be required to sign any checks or file any reports, as she would prepare

and file all the reports with the FEC.  Teltschik claims that Bonfiglio assured him that she

possessed the competence and experience necessary to fulfill these obligations.

On June 9, 2004, the FEC sent a notice to Teltschik at Williams & Jensen's address

stating that it would conduct an audit of ARMPAC.  Teltschik claims that he never authorized

the FEC to send his mail to Williams & Jensen and that no one at Williams & Jensen ever

informed him about the FEC notice.

On March 31, 2005, the FEC sent Teltschik an interim audit report, again to Williams & Jensen's address, informing him of discrepancies in reports filed on behalf of ARMPAC. The FEC required a response to the interim report before May 3, 2005. Again, Teltschik claims that no one at Williams & Jensen informed him that this report was received, that a response was required, or that Williams & Jensen subsequently filed for, and obtained, an extension of the response deadline.

Later that year, Citizens for Responsibility and Ethics in Washington ("CREW") filed a complaint with the FEC against ARMPAC based upon the results of the FEC's audit report. In response to CREW's complaint, the FEC opened Matter Under Review ("MUR") No. 5675.

On August 17, 2005, the FEC sent another letter to Teltschik at Williams & Jensen's address. The letter indicated that ARMPAC and Teltschik, as Treasurer of ARMPAC, were named as respondents in a complaint filed by CREW and that if Teltschik wished to be represented by counsel, he was required to complete a designation of counsel form and return it to the FEC.

On September 6, 2005, Bonfiglio called Teltschik to inform him about the complaint and to request that he fill out the required designation of counsel form. Teltschik asserts that during the course of the conversation, Bonfiglio assured him that the complaint was nothing but a harassment tactic. According to Teltschik, Bonfiglio, however, did not tell him that he was named as a respondent in the complaint. That same day, Bonfiglio sent Teltschik a blank copy of the designation of counsel form and asked him to sign the form and return it to her. Bonfiglio did not send Teltschik a copy of the complaint or the FEC letter addressed to him, however. Teltschik refused to sign the form and told Bonfiglio that "[he] was refusing because [he] wanted

to be in the loop regarding any further proceedings pertaining to MUR 5675."  Pl.'s Statement of

Contested Issues ("Pl.'s Stmt.") Ex. 1 ¶ 16.  After Teltschik refused to sign, Bonfiglio filled out

the form, designating Don F. McGahn II, an attorney with McGahn and Associates, PLLC, as

counsel for respondents.  Bonfiglio signed the form, in her own name, in the blank space labeled

respondent.  In a letter dated September 6, 2005, Bonfiglio requested the FEC to grant ARMPAC

an extension of time for filing a response to the complaint filed in MUR 5675.

Bonfiglio filed the designation of counsel form with the FEC on September 30, 2005.

That same day, the FEC received a response to CREW's complaint, which McGahn submitted

and signed as "Counsel for Americans for a Republican Majority."  Pl.'s Stmt. Ex. 11

("ARMPAC Response") at 14.  The response, entitled "Response of Americans for a Republican

Majority to the Complaint Filed by the Citizens for Responsibility and Ethics in Washington,"

does not mention Teltschik in any capacity.  *Id.*  No other response was filed in MUR 5675.

On June 22, 2006, a Conciliation Agreement in MUR 5675 ("Agreement" or

"Conciliation Agreement") was filed with the FEC.  The Agreement named Teltschik, in his

official capacity, as a respondent.  Teltschik alleges that the Conciliation Agreement accused him

of criminal conduct and confessed judgment on his behalf without his authorization.

Specifically, the Agreement states that "[t]he [FEC] found reason to believe that Americans for a

Republican Majority . . . and Corwin Teltschik, in his official capacity as Treasurer, (collectively,

'Respondents') violated 2 U.S.C. § 434(b) and 11 C.F.R. §§ 102.5(a), 104.3(d), 104.10, 104.11,

106.5(f) and 106.6."  Defs.' Mot. for Summ. J. Ex. E ("Conciliation Agreement") at 1.  The

Agreement further requires "Respondents" to (1) pay a $115,000 civil penalty; (2) cease and

desist from further violations; and (3) amend its reports to comport with the Agreement and file a

termination report with the FEC.  Meredith Kelley, an attorney at Williams & Jensen who undertook Bonfiglio's duties regarding ARMPAC upon Bonfiglio's departure, signed the agreement in her own name "For Respondents."  Conciliation Agreement at 9.[1]

Teltschik's wife found a copy of the Conciliation Agreement between ARMPAC and the FEC on the Internet, and, on August 6, 2006, sent it to Teltschik.  Teltschik alleges that he first learned that he had been named in the FEC's proceeding against ARMPAC when he was informed of the proceeding by his wife.  Teltschik also alleges that he was unaware that McGahn had been hired to represent ARMPAC and Teltschik, that an answer to the complaint had been filed, or that a Conciliation Agreement was entered into on his behalf.  According to Teltschik, every document concerning MUR 5675 was filed without his knowledge and without his consent; he alleges that he did not authorize anyone to respond on his behalf or represent him before the FEC.

On August 15, 2006, Teltschik alleges that he inquired of Williams & Jensen about the Conciliation Agreement that had been filed in MUR 5675 with the FEC.  According to Teltschik, Robert Martinez, managing partner at Williams & Jensen, informed him that McGahn had been hired to represent ARMPAC.

Almost a year later, Teltschik filed a complaint against defendants in the Southern District of Texas.[2]  The case was subsequently transferred to this Court.

---

[1]     It is unclear from the record whether Kelley officially became ARMPAC's Assistant Treasurer after Bonfiglio left Williams & Jensen.  Both Bonfiglio and Kelley merely state in their respective declarations that Kelley assumed Bonfiglio's duties after Bonfiglio left the firm.

[2]     Teltschik also named McGahn as a defendant in his complaint, however, the United States District Court for the Southern District of Texas dismissed McGahn as a defendant

## II.  MOTIONS TO STRIKE

Before the Court addresses defendants' motion for summary judgment, it is appropriate to address defendants' motion to strike various allegations that appear in Teltschik's opposition and Teltschik's motion to strike Bonfiglio's original and supplemental declarations.

### A.        Defendants' Motion to Strike

Defendants contend that various allegations in Teltschik's opposition to their motion for summary judgment do not appear in his complaint and move to strike them.  Defendants argue that discovery in this case is closed and that they have not had an opportunity to conduct discovery on Teltschik's new allegations.  Defendants also note that Teltschik never sought leave to amend his complaint to include these new allegations.[3]  Specifically, defendants move to strike the following allegations:

1. That any defendant could be liable because they [did not] forward ARMPAC contributions to [Teltschik];
2. That any defendant could be liable because they [did not] give him original records related to ARMPAC during the course of this lawsuit;
3. That any defendant could be held liable to [Teltschik] based on some . . . accusation of forgery, unrelated to MUR 5675;
4. That any defendant could be liable for filing reports electronically in his name or as "Treasurer;"
5. That [Teltschik] . . . was a "third-party beneficiary" of an agreement between Williams & Jensen and ARMPAC; or
6. That any defendant could be liable under a theory of *res ipsa loquitor*.

Defs.' Mot. to Strike Pl.'s Unpled Theories ("Defs.' Mot. to Strike") at 2-3.

---

for lack of personal jurisdiction. This Court denied Teltschik's motion to reconsider that ruling.

[3]        In response to defendants' motion to strike, Teltschik now seeks to amend his complaint.  Teltschik had not sought leave to amend his complaint prior to defendants' motion, however.  For the reasons elaborated *infra,* the Court will deny Teltschik's motion to amend his complaint.

Teltschik does not dispute defendants' contention that he does not raise these allegations in his complaint.[4]  Teltschik argues, however, that defendants' motion to strike the allegations should be denied because the allegations do not raise any new claims and are merely additional facts asserted to support the claims already in his complaint.  Alternatively, Teltschik seeks leave to amend his complaint to include the additional allegations.

**1.  Allegations 1, 2, 3, and 4**

A plaintiff may not assert new allegations at the summary judgment stage if such allegations amount to a "fundamental change" in the nature of plaintiff's claims.  *See Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (stating that plaintiff could not expand his FMLA allegations in response to defendant's motion for summary judgment because the new allegations amount to a "fundamental change" in the nature of plaintiff's claim); *see also Sharp v. Rosa Mexicano*, *D.C., L.L.C.*, 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2007) (stating that plaintiff may not, "through summary judgment briefs, raise [ ] new claims . . . because plaintiff did not raise them in his complaint, and did not file an amended complaint"); *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (rejecting plaintiff's attempts to broaden its conspiracy claims in its opposition to defendant's motion for summary judgment).  The allegations numbered 1, 2, 3, and 4 fundamentally change the nature of Teltschik's claims and therefore must be stricken.

---

[4]      Although Teltschik does not dispute that his complaint does not raise the allegation that any of the defendants is "liable for filing reports electronically in his name," the Court notes that Teltschik's complaint does state that Williams & Jensen filed with the FEC ARMPAC's Fifth Statement of Organization, which bears his forged electronic signature.  This is the only document that the complaint alleges defendants filed electronically in Teltschik's name prior to the opening of MUR 5675, however, and it is not relevant to any of Teltschik's claims.  The document does not relate to MUR 5675 and Teltschik makes no further mention of it in any of his subsequent filings.

Regarding allegations 1 and 2, Teltschik argues that defendants' failure to forward contributions for ARMPAC to him, as required by 2 U.S.C. § 432(b)(1),[5] and their failure and refusal to forward ARMPAC's original records to him, as required by 2 U.S.C. § 432(d),[6] show that defendants owed him a statutory duty.  In his complaint, however, Teltschik does not refer to either 2 U.S.C. § 432(b)(1) or 2 U.S.C. § 432(d), and does not mention, or even hint at, any alleged failure on defendants' part to send him contributions for ARMPAC or ARMPAC's original records.[7]  Furthermore, Teltschik's breach of fiduciary duty and negligence claims were not based on such allegations.  Teltschik states that defendants owed a duty to him because "Bonfiglio (and William[s] & Jensen) specifically sought [his] authorization to represent [him] before the FEC on the complaint" and because "Williams & Jensen, Bonfiglio and Kelley, provided legal services and advice to [him]."  Compl. ¶¶ 41, 42.  Thus, by now asserting that defendants owed him a duty separate and apart from those discussed in his complaint, Teltschik attempts to fundamentally change the nature of his breach of fiduciary duty and negligence claims.[8]

---

[5]  2 U.S.C. § 432(b)(1) provides, in relevant part, that "[e]very person who receives a contribution for an authorized political committee shall, no later than 10 days after receiving such contribution, forward to the treasurer such contribution."  2 U.S.C. § 432(b)(1).

[6]  2 U.S.C. § 432(d) provides, in relevant part, that "[t]he treasurer shall preserve all records required to be kept by this section and copies of all reports required to be filed by this subchapter for 3 years after the report is filed."  2 U.S.C. § 432(d).

[7]  In his complaint, Teltschik does state that he requested that Williams & Jensen send him ARMPAC's organizational documents and that Williams & Jensen "faxed to Plaintiff some of the requested formation documents and sample bank statements."  Compl. ¶ 26. Teltschik does not assert that Williams & Jensen refused to send the remaining organizational documents or that such action was required, however.

[8]  In any event, as discussed in Part III (B)(1)(a)(iii), Teltschik fails to establish the necessary elements required to make out a breach of fiduciary duty or negligence claim based on defendants' alleged failure to deliver ARMPAC's records to him.

Regarding allegations 3 and 4, Teltschik claims that the forging of his signature on documents filed with the FEC and the filing of reports with the FEC that purported to be filed electronically by him proves that Bonfiglio, Kelley, and Williams & Jensen breached their fiduciary duty to him.  Teltschik also appears to allege that allegations 3 and 4 support his misappropriation of name and reputation claim.

Teltschik's complaint, however, focuses on defendants' activities associated with MUR 5675 and the Conciliation Agreement that resulted from that MUR.  Specifically, Teltschik's breach of fiduciary duty claim is centered around defendants' failure to notify him of the complaint that was filed against him and their alleged unauthorized representation of him in MUR 5675.  Teltschik may not now expand defendants' alleged wrongdoings to include the forging of documents filed with the FEC that occurred long before the FEC opened MUR 5675.

Similarly, the sole basis of the misappropriation of name and reputation claim pled in Teltschik's complaint is defendants' alleged action of entering into a Conciliation Agreement on his behalf without his consent.  Thus, the subsequent assertion of an additional ground for misappropriation of name—the use of Teltschik's name on other FEC filings without his authorization—amounts to a fundamental change in the nature of Teltschik's misappropriation of name and reputation claim.

Teltschik proceeded through discovery without seeking to amend his complaint. Therefore, Teltschik may not raise these new allegations now when discovery is closed and  the case is in the midst of summary judgment proceedings.

The Court also denies Teltschik's alternative motion to amend his complaint.  Not only does Teltschik fail to offer any grounds for leave to amend, *see* Federal Rule of Civil Procedure

7(b), he also fails to attach his proposed amended complaint as required by LCvR 15.1, s*ee Calloway v. Brownlee*, 366 F. Supp. 2d 43, 45 n.2 (D.D.C. 2005) (denying plaintiff's motion for leave to file an amended complaint for failure to comply with the local rules when plaintiff did not attach the proposed amended complaint).  In any event, the Court finds that allowing Teltschik to amend his complaint at this late juncture "would result in delay or undue prejudice to the opposing party."  *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987); *see also Hoffmann v. United States*, 266 F. Supp. 2d 27, 34 (D.D.C. 2003) (stating that "[a] plaintiff . . . cannot be permitted to 'circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens'" (quoting *Glesenkamp v. Nationwide Mutual Ins. Co.*, 71 F.R.D. 1, 4 (N.D. Cal. 1974), *aff'd per curiam*, 540 F.2d 458 (9th Cir. 1976))).  Teltschik may not now raise new allegations by amendment years after he filed his original complaint and after the parties have conducted extensive discovery.  *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 127-128 (D.C. Cir. 1987).

Accordingly, defendants' motion to strike will be granted as it relates to allegations 1, 2, 3, and 4 and Teltschik's motion to amend his complaint will be denied.

## 2.  Allegation 5

In his opposition to defendants' motion to strike, Teltschik fails to respond to defendants' argument that the Court should strike allegation 5, that Teltschik was a third-party beneficiary of an agreement between Williams & Jensen and ARMPAC.  The Court therefore treats the argument as conceded.  *See Klugel v. Small*, 519 F. Supp. 2d 66, 72 (D.D.C. 2007) ("It is well established in the D.C. Circuit that when a party does not address arguments raised by a movant,

the court may treat those arguments as conceded." (citing *Hopkins v. Women's Div. Gen. Bd. of Global Ministries*, 238 F.Supp.2d 174, 178 (D.D.C.2002))).

Accordingly, defendants' motion to strike will be granted as it relates to allegation 5.

### 3. Allegation 6

Finally, defendants contend that allegation 6, that any defendant can be held liable under the doctrine of res ipsa loquitur, must be stricken because Teltschik failed to plead the doctrine in his complaint.  In the alternative, defendants contend that Teltschik does not provide enough evidence to survive summary judgment on this issue.  Defendants' arguments cannot be sustained.

With respect to defendants' argument that Teltschik's assertion regarding their liability under the doctrine of res ipsa loquitur must be stricken because it was not plead in his complaint, the argument fails because "[i]t is well settled in this jurisdiction that res ipsa loquitur is a rule of evidence and not one of pleading or substantive law."  *Honey v. George Human Const. Co.*, 63 F.R.D. 443, 451 (D.D.C. 1974); *see also Powers v. Coates*, 203 A.2d 425 (D.C. 1964) (stating that "[i]t was error for the trial court to rule that the doctrine of res ipsa could not be considered because not pleaded" because "[t]he doctrine is a procedural rule of evidence and is not a rule of pleading").  Therefore, defendants' motion to strike allegation 6 will be denied.

As for defendants argument that Teltschik has not established facts sufficient to defeat their motion for summary judgement with respect to Teltschik's invocation of the res ipsa loquitur doctrine, the Court concludes that at this point—particularly when the evidence must be viewed in a light most favorable to Teltschik—the Court is not able to say that defendants are entitled to such a ruling as a matter of law.  To reiterate, res ipsa loquitur is a rule of evidence.  It

11

is not substantive law which is capable of providing a basis for holding a party liable on any

cause of action.  The Court will make a decision whether res ipsa loquitur may be invoked at an

appropriate time during the trial, perhaps at the very end of the case after all of the evidence has

been presented.

**B.**      **Teltschik's Motion to Strike**

Teltschik moves to strike Bonfiglio's original declaration, submitted with defendants'

motion for summary judgment, and Bonfiglio's supplemental declaration, submitted with

defendants' motion to strike.  The Court will address each declaration separately.

First, there is no basis to strike Bonfiglio's original declaration.  Teltschik argues that

Bonfiglio's original declaration should be stricken because she stated in a deposition that she

never represented to anyone or to any federal agency that she was the Treasurer of ARMPAC.

Teltschik has demonstrated that this statement is likely false by attaching FEC filings in which

Bonfiglio signed her name in the box labeled "Signature of Treasurer."

A party moving to strike "bears a heavy burden as courts generally disfavor motions to

strike." *Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176, 180 (D.D.C. 2005).

Teltschik has not met this burden.  Pointing solely to an inaccuracy in Bonfiglio's *deposition*,

Teltschik does not specify any objection to any statements in Bonfiglio's *original declaration*.

Although Bonfiglio's deposition may have contained a false statement, Teltschik has not

provided any support for the proposition that one inaccurate statement in a deposition warrants

the striking of a separate declaration.  Even if the false statement were in Bonfiglio's declaration,

the Court still would not strike the declaration in its entirety.  *See Aftergood v. Centeral

Intelligence Agency*, 355 F. Supp. 2d 557, 565 (D.D.C. 2005) (stating that if the challenged

12

affidavit contained inaccurate information, "the court would merely excise the false statement"

instead of striking the affidavit in its entirety). Indeed, "[i]n resolving motions to strike . . . the

court [should] use [ ] a scalpel, not a butcher knife." *Canady*, 384 F. Supp. 2d at 180 (internal

quotation marks omitted). Because Teltschik fails to proffer a sufficient reason to strike

Bonfiglio's original declaration from the record of this case, the Court concludes that his motion

must be denied.

Furthermore, because the Court grants in part defendants' "Motion to Strike Plaintiff's

Unpled Theories," including the allegation that defendants could be liable for filing reports

electronically in his name or as "Treasurer," the Court need not consider Bonfiglio's

supplemental declaration, that was submitted by defendants solely to respond to Teltschik's

allegations regarding the filing of reports with his electronic signature. Teltschik's motion to

strike Bonfiglio's supplemental declaration, accordingly, is moot.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.     Legal Standard**

Summary judgment may be granted only where the "pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c)(2); *Quigley v. Giblin*, 569 F.3d 449, 453 (D.C. Cir. 2009). A material fact is one that is

capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242,

248 (1986). A genuine issue is one where the "evidence is such that a reasonable jury could

return a verdict for the nonmoving party," *id.* at 248, as opposed to evidence that "is so one-sided

that one party must prevail as a matter of law," *id.* at 252. A court considering a motion for

13

summary judgment must draw all "justifiable inferences" from the evidence in favor of the

nonmovant.  *Id.* at 255.  But the non-moving party's opposition must consist of more than mere

unsupported allegations or denials and must be supported by affidavits or other competent

evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P.

56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

B.      **Negligence and Breach of Fiduciary Duty**

Because the evidence and principles of law regarding Teltschik's claims of negligence

and breach of fiduciary duty in this case overlap, the Court will address defendants' motion for

summary judgment as to these claims together.

Defendants contend that they are entitled to summary judgment as to these claims

because Teltschik has failed to show that (1) any defendant owed Teltschik a duty; (2) any

defendant breached a duty owed to Teltschik; or (3) the existence of any proximately caused

damages based on defendants' alleged breach of duty.

**1.  Duty**

A plaintiff may only prevail on a claim for breach of fiduciary duty or professional

negligence against a defendant who owed a duty of care to that plaintiff.  *Taylor v. Akin, Gump,*

*Strauss, Hauer & Feld*, 859 A.2d 142, 147 (D.C. 2004); *see also N.O.L. v. District of Columbia*,

674 A.2d 498, 499, n.2 (D.C. 1995) ("The foundation of modern negligence law is the existence

of a duty owed by the defendant to the plaintiff.  Negligence is a breach of duty; if there is no

duty, there can be no breach, and hence no negligence." (citing *Palsgraf v. Long Island R.R.*, 248

N.Y. 339 (1928)).[9]  In asserting that defendants did not owe Teltschik any duty that would make

them liable to him, defendants seem to make two main arguments:  (1) no fiduciary relationship

existed between Teltschik and any of the defendants that would give rise to a duty and (2) even if

such a relationship existed, defendants did not owe Teltschik any duty *personally* because he was

a respondent in MUR 5675 only in his *official capacity*.  The Court will address each argument

in turn.

### a.  Fiduciary Relationship

Teltschik argues, and defendants contest, that he had an attorney-client relationship with

defendants.  An attorney owes a duty of care to a client if an attorney-client relationship exists.

*See, e.g.*, *Taylor*, 859 A.2d at 147; *Battle v. Thornton*, 646 A.2d 315, 319 (D.C. 1984).  Whether

an attorney-client relationship existed is to be determined by the fact finder based on the

circumstances of each case.  *See In re Lieber*, 442 A.2d 153, 156 (D.C. 1982).  At this stage of

the proceedings, the Court determines whether a reasonable jury could determine whether "the

parties, explicitly or by their conduct, manifest[ed] an intention to create the attorney/client

relationship."  *In re Ryan*, 670 A.2d 375, 379 (D.C. 1996) (discussing Texas law and noting that

"the law in the District of Columbia is no different").  In making this determination, courts

consider factors such as whether the client perceived that an attorney-client relationship existed,

whether the client sought professional advice or assistance from the attorney, whether the

---

[9]      This action invokes the Court's diversity jurisdiction.  As a federal court sitting in diversity, we are bound to apply state substantive law.  *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).  The parties agree that this case is governed substantively by District of Columbia common law.  *See Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) (holding that for purposes of applying the *Erie* doctrine, D.C. law qualifies as state law (citing *Lee v. Flintkote Co.*, 593 F.2d 1275, 1279 n.14 (D.C. Cir. 1979))).

attorney took action on behalf of the client, and whether the attorney represented the client in proceedings or otherwise held herself out as the client's attorney. *See, e.g.*, *In re Lieber*, 442 A.2d at 156; *In re Shay*, 756 A.2d 465, 474-75 (D.C. 2000); *In re Bernstein*, 707 A.2d 371, 375 (D.C. 1998). An attorney-client relationship can exist even if the parties do not have a written agreement, the client does not pay the attorney any fees, and the attorney does not give the client any legal advice. *In re Lieber*, 442 A.2d at 156.

### i. Barbara Bonfiglio

In her declaration, Bonfiglio claims that she never formed an attorney-client relationship with Teltschik or had any fiduciary relationship with him. Bonfiglio also states that "no attorneys from Williams & Jensen participated in any actions, defenses or negotiations whatsoever with the FEC regarding MUR 5675 or in drafting the Conciliation Agreement which was ultimately entered into by ARMPAC and the FEC." Defs.' Mot. for Summ. J. Ex. A ("Bonfiglio Decl.") ¶ 16. Teltschik rejoins that Bonfiglio did provide legal services to, for, and on his behalf. He claims that he sought legal advice specifically from Bonfiglio, which she voluntarily provided.

The evidence submitted by the parties illustrates that a genuine issue of material fact exists as to whether Bonfiglio and Teltschik formed an attorney-client relationship. Contrary to her declaration, a reasonable jury could determine that Bonfiglio represented Teltschik as his attorney in past FEC matters. Pursuant to 11 C.F.R. § 111.23, a respondent that "wishes to be represented by counsel with regard to any matter pending before the Commission . . . shall so advise the Commission by sending a letter of representation signed by the respondent," and providing "[a] statement authorizing such counsel to receive any and all notifications and other

communications from the Commission on behalf of respondent."  11 C.F.R. § 111.23(a) (2010).

Teltschik provides evidence that the FEC received letters of attorney designation, dated

December 19, 2002 and December 28, 1999, authorizing Bonfiglio to represent him in MUR

5338 and MUR 4953, respectively.  Pl.'s Stmt. Ex. 12, 13.[10]

In addition, there is evidence in the record that Bonfiglio gave Teltschik legal advice.

Teltschik claims that he asked Bonfiglio for advice regarding his duties as Treasurer, including

"what would be legally required of [him] regarding the receipt and disbursement of ARMPAC

funds and filing reports as required by law."  Pl.'s Stmt. Ex. 1 ("Teltschik Decl.") ¶ 3.

Furthermore, correspondence from the FEC addressed to Teltschik was delivered to the

offices of Williams & Jensen.[11]  Bonfiglio received, read, and responded to correspondence from

the FEC specifically addressed to Teltschik.  When the FEC sent time-sensitive legal

correspondence to Teltschik at Williams & Jensen's address, Bonfiglio called Teltschik to advise

him about the complaint filed with the FEC and to advise him that the complaint was meritless.

Indeed, in her declaration Bonfiglio admits that she contacted Teltschik as necessary to sign

appropriate forms as Treasurer.  She sought, but did not receive, such authorization on

September 6, 2005, when she asked him to sign the designation of counsel form for MUR 5675.

Even were the Court to assume that there is no attorney-client relationship between

Bonfiglio and Teltschik, a reasonable jury could still find that there was a fiduciary relationship

---

[10]     As mentioned earlier, Bonfiglio also claims that she did not participate in any
actions with regard to MUR 5675.  The evidence, however, suggests otherwise.  In a letter to the
FEC dated September 6, 2005, Bonfiglio requested an extension of time for the filing of a
response to the complaint in MUR 5675.  Pl.'s Stmt. Ex. 18.

[11]     It is unclear from the record how the FEC received an address for Teltschik.

between them.  "District of Columbia law has deliberately left the definition of 'fiduciary

relationship' flexible, so that the relationship may change to fit new circumstances in which a

special relationship of trust may properly be implied."  *High v. McLean Fin. Corp.*, 659 F. Supp.

1561, 1568 (D.D.C. 1987).  Indeed, some courts have interpreted fiduciary relationships broadly:

> [A] fiduciary relationship is one founded upon trust or confidence reposed by one
> person in the integrity and fidelity of another.  It is said that the relationship exists
> in all cases in which influence has been acquired and betrayed.  The rule embraces
> both technical fiduciary relations and those informal relations which exist
> whenever one man trusts in, and relies upon, another . . . .

*Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994) (citations

and internal quotation marks omitted).  As mentioned previously, there is evidence that Teltschik

relied on Bonfiglio's assurance that all matters would be properly handled by Williams & Jensen.

Furthermore, Teltschik raises at least a genuine dispute about whether Bonfiglio and Teltschik

had a fiduciary relationship when Bonfiglio opened, read and ultimately decided what to do with

correspondence addressed to him.

 In sum, when the evidence is viewed in a light most favorable to Teltschik, a reasonable

jury could find that a fiduciary relationship existed between him and Bonfiglio.

### ii.  Meredith Kelley

 Teltschik asserts that Kelley signed the Conciliation Agreement as his attorney although

she was not authorized to do so.  Defendants dispute Teltschik's assertion; they claim that

McGahn was the designated counsel in MUR 5675 and that Kelley only signed the Agreement

after James E. Tyrrell, one of McGahn's staff members, told her that all the parties involved had

agreed to the Agreement and that her signature was needed in order to the file the Agreement

with the FEC.  Although Kelley signed the Conciliation Agreement on behalf of respondents, it is

unclear in what capacity she signed.  The Agreement states that the FEC was represented by Lawrence H. Norton, General Counsel, and that the Agreement was signed on his behalf by Rhonda J. Cosdingh, Associate General Counsel for Enforcement.  Such detail, however, is lacking when it comes to respondents.  No designation of title appears under Kelley's signature and there is no other indication in what capacity Kelley signed the Agreement.[12]

Even if Kelley did not sign the Agreement as Teltschik's attorney, by signing on behalf of Teltschik, Kelley held herself out to be his agent.  Kelley's signature on the Agreement bound the parties, including Teltschik, to the terms contained therein.  Furthermore, as will be elaborated *infra*, in the event of a breach of the Agreement, Teltschik could have been liable to the FEC, a third-party.  *See Mills v. Comm'r of Internal Revenue*, 132 F.2d 753, 755 (1st Cir. 1943) (describing the "well known" characteristics of an agency relationship as involving "inter alia, the power of the agent to bind his principal as to third persons; the existence of a fiduciary relationship between principal and agent; and the right of the principal to control the conduct of the agent with respect to matters entrusted to him").

Because it is unclear in what capacity Kelley signed the Conciliation Agreement, and because a reasonable jury could find that a fiduciary relationship existed between Kelley and Teltschik, summary judgment may not be granted as to her on this ground.

### iii.  Robert Martinez

Martinez was not involved with Williams & Jensen's representation of ARMPAC and Teltschik in MUR 5675 or in the drafting or execution of the Conciliation Agreement in that

---

[12]     Notably absent from the Conciliation Agreement is the signature of designated counsel for respondents, McGahn.

matter.  Indeed, Martinez's only communication with Teltschik was in late August 2006, after the

Conciliation Agreement had been signed and filed.  As to Martinez, Teltschik alleges only that

Martinez refused to deliver ARMPAC's records to him—an allegation that Teltschik brings up

for the first time in his opposition to defendants' motion for summary judgment.  As mentioned

in Part II, the Court will not consider allegations that fundamentally change the nature of

Teltschik's complaint at this late juncture.

Even were the Court to consider Teltschik's claim that Martinez refused to deliver

ARMPAC's records to him, Teltschik fails to produce evidence, or even allege, that a

relationship existed between himself and Martinez that would give rise to a fiduciary duty.  This

is fatal to Teltschik's claim against Martinez as there can be no breach of duty if a legal duty is

not owed to the claimant.  *See Taylor*, 859 A.2d at 147 (D.C. 2004).[13]  Accordingly, summary

judgment shall be granted in favor of defendants regarding Teltschik's breach of fiduciary duty

and negligence claims against Martinez.[14]

### b.  Distinction between official capacity suits and personal capacity suits

Next, defendants contend that even if they could be considered Teltschik's counsel, any

duty they may have owed him did not exist with regard to their activities in connection with

MUR 5675 because they represented Teltschik in this matter only in his official capacity as

ARMPAC's treasurer.  Defendants argue that naming a treasurer in his official capacity "is

simply another way of naming the political action committee and does not subject [the] Treasurer

---

[13]     Teltschik also fails to allege that any harm resulted from Martinez's alleged
failure to deliver the records.

[14]     Indeed, Teltschik does not even mention Martinez, or any activities in which
Martinez engaged, in Teltschik's "Statement of Contested Issues."  *See* LCvR 7(h)(1).

to civil or criminal findings or responsibility." Defs.' Mot. at 8.  According to defendants' logic, this distinction relieves all defendants from any duty they may have owed Teltschik personally regarding MUR 5675.

Although the question of whether a legal duty is owed to a plaintiff is usually a question of law to be determined by the Court, *see In re Sealed Case*, 67 F.3d 965, 968 (D.C. Cir. 1995), the existence of duty in this case is dependent on whether any fiduciary relationship that defendants may have had with Teltschik personally, including any attorney-client relationship, included defendants' activities in connection with MUR 5675.  Such a question is a matter of fact for the jury to decide.  *Cf. C & E Services, Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 271 (D.D.C. 2009) (stating that "whether the parties were acting within the scope of a fiduciary relationship is a question of fact for the jury to decide, not a question for the court").  If a reasonable jury could determine that a fiduciary relationship between defendants and Teltschik included defendants' activities in connection with MUR 5675, then by law, defendants owed Teltschik a duty regarding MUR 5675.  *See e.g.*, *Morrison v. MacNamara*, 407 A.2d 555, 561 (D.C. 1979) ("[A] lawyer must exercise that degree of reasonable care and skill expected of lawyers acting under similar circumstances."); *Government of Rwanda v. Rwanda Working Group*, 227 F. Supp. 2d 45, 63-64 (D.D.C. 2002) ("An agent owes her principal a fiduciary duty and a duty of loyalty." (citations omitted)).

Defendants' argument that they owed Teltschik no duty is premised on the distinction between official capacity suits and individual capacity suits.  To be sure, there is an important distinction between official and individual capacity suits.  "An official capacity proceeding 'is not a suit against the official but rather is a suit against the official's office.'" Defs.' Mot. for

Summ. J. Ex. K ("FEC Policy Statement") at 2 (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)).  Defendants' argument that an official capacity suit is outside the scope of any fiduciary relationship Bonfiglio and Kelley may have had with Teltschik and therefore relieves them of *any* duty that they may have otherwise owed him makes a leap that is not supported, however.  While defendants provide a lengthy explanation of when in the course of an enforcement proceeding a Treasurer is subject to FEC action in his official capacity versus his personal capacity, defendants cite no authority for the proposition that a fiduciary relationship, especially an attorney-client relationship, does not extend to matters where an individual is named as a respondent in his official capacity.  Specifically, defendants fail to support their contention that a client's attorney or a principal's agent may sign a document of consequence on behalf of her client or principal without his consent and against his expressed wishes if she represents him in his official capacity only.

More importantly, defendants ignore evidence in the record and authority cited by Teltschik, including sections of the FEC Policy Statement and the FEC designation of counsel form sent to Teltschik, that show that Teltschik, as a respondent in MUR 5675, was the person responsible for representing the committee in any enforcement proceeding, filling out the designation of counsel form, and abiding by the terms contained in the Conciliation Agreement. Based on such evidence and authority, a reasonable jury could conclude that Bonfiglio and Kelley had a fiduciary relationship with Teltschik, and therefore a duty to Teltschik, in connection with MUR 5675.  Such is so notwithstanding the fact that he was named as a respondent in his official capacity.

22

In *Federal Election Commission v. Committee of 100 Democrats*, 844 F. Supp. 1 (D.D.C. 1993), this Court found that the defendant, who was named as a respondent in his capacity as Treasurer of a political action committee, could be held personally liable for any breaches of the conciliation agreement.[15]  *Id.* at 6 ("[The treasurer]'s status as a party to each of the agreements subjects him to personal liability for their violation."); *see also id.* (accepting the FEC's argument that "the agreements are unambiguous in their application to [the treasurer], who is named as a party to each of the agreements" and "the failure to comply subjects the parties, including [the treasurer], to an order enforcing the conciliation agreements pursuant to 2 U.S.C. § 437g(a)(5)(D)").[16]  Therefore, in *Committee of 100 Democrats,* the Court ordered the committee and its Treasurer to pay the FEC the civil penalty that was agreed to in the conciliation agreement in addition to paying a penalty for violating the terms of the agreement.[17]

---

[15]     Although Teltschik cites *Committee of 100 Democrats* throughout his opposition for the proposition that as a named party to the complaint and Conciliation Agreement he could be held liable for ARMPAC's breach of the agreement, defendants contest the existence of such liability without distinguishing, or even mentioning, *Committee of 100 Democrats*.

[16]     2 U.S.C. § 437g(a)(5)(D) provides:
In any case in which a person has entered into a conciliation agreement with the Commission under paragraph (4)(A), the Commission may institute a civil action for relief under paragraph (6)(A) if it believes that the person has violated any provision of such conciliation agreement.  For the Commission to obtain relief in any civil action, the Commission need only establish that the person has violated, in whole or in part, any requirement of such conciliation agreement.
2 U.S.C. § 437g(a)(5)(D) (2006).

[17]     Notably, the Conciliation Agreement in MUR 5675 also required Teltschik and ARMPAC to pay a civil penalty.  One of the conciliation agreements in *Committee of 100 Democrats* required respondents to pay a $3,500 civil penalty.  The Conciliation Agreement at issue in this case required respondents to pay a $115,000 civil penalty.

Even if Teltschik could not be held *personally* liable for the breach of the Conciliation Agreement, *Committee of 100 Democrats* makes clear that, at the very least, as Treasurer of ARMPAC and as a named respondent to the Conciliation Agreement, he was the individual responsible for making sure the committee abides by the terms of the Conciliation Agreement. Specifically, this Court stated that a defendant's status as Treasurer on the agreement is "of limited relevance."  According to the Court,

> [i]t is relevant insofar as the substitution of the word 'treasurer' for his name in the [conciliation] Agreement results in his being named as a 'respondent' who must comply with that agreement, and insofar as it enabled him to take measures to bring the defendant committees into compliance with their respective conciliation agreements.

*Id.* at 6-7.

The FEC Policy Statement further indicates that the party named in a conciliation agreement is responsible for making sure its terms are satisfied.  According to the FEC, the person who is identified as a respondent in an MUR is ultimately responsible for representing the committee in an enforcement action.  Furthermore, when explaining the rationale for naming Treasurers in their official capacity, the Policy Statement explains that "treasurers of committees are in the best position to carry out the requirements of a conciliation agreement such as paying a civil penalty, refunding or disgorging contributions, and amending reports."  *Id.*  Indeed, according to 11 C.F.R. § 102.7©, "[n]o expenditure shall be made for or on behalf of a political committee without the authorization of its treasurer or of an agent authorized orally or in writing by the treasurer."  Therefore, the Treasurer is the only member of a committee who can pay any monetary remedies agreed to in a conciliation agreement.  Because any other member of the committee, even the Assistant Treasurer, would need the Treasurer's express authorization, no

one in ARMPAC could carry out the terms of the Conciliation Agreement if Teltschik refused to

provide his authorization.[18]

The FEC Policy Statement's stated rationale for naming Treasurers in their official

capacity in MURs also seems to indicate that Teltschik, as Treasurer of ARMPAC, is the

individual responsible for signing the required designation of counsel form and any conciliation

agreement:

> the practice [of naming the treasurer in his official capacity] also ensures that a
> named individual who signs the conciliation agreement on behalf of the
> committee (or obtains legal representation on behalf of the committee) is the one
> empowered by law to disburse committee funds to pay a civil penalty, disgorge
> funds, make refunds, and carry out other monetary remedies that the committee
> agrees to through the conciliation agreement.

FEC Policy Statement at 2.

Furthermore, the designation of counsel form that was attached to the FEC's letter

addressed to Teltschik and 11 C.F.R. § 111.23 explicitly state that a respondent to an MUR, here

Teltschik, must sign the form if he wishes to have counsel represent him.  *See* 11 C.F.R. §

111.23; Pl.'s Stmt. Ex. 17 ("Designation Form") at 2.  And, neither 11 C.F.R. § 111.23 nor the

designation of counsel form makes any exceptions for officers named in their official capacity

and defendants fail to cite any support for, or the existence of, such an exception.[19]  Although the

FEC letter explicitly states that Teltschik, as a respondent to the complaint, must sign the

---

[18]     The Treasurer's importance is further evidenced by the fact that it is the only
position that a political committee is required to have.  *See* 2 U.S.C. § 432(a).

[19]     For example, defendants do not cite to any rule, regulation, or policy that provides
that a third-party, such as the Assistant Treasurer, can sign on behalf of the named respondents to
a complaint if it is an official capacity suit.

designation of counsel form, Bonfiglio decided to sign the form when Teltschik refused to do so.[20]

Because a reasonable jury could find that Bonfiglio and Kelley had a fiduciary relationship with Teltschik in connection with their activities involving MUR 5675, and owed Teltschik a fiduciary duty based on such a relationship, defendants are not entitled to summary judgment on the ground that their relationship with Teltschik was in his official capacity only.

## 2.  Breach of Duty

The facts surrounding Bonfiglio and Kelley's alleged breach of duty are clear and their specific actions are not contested.  For example, defendants do not contest that Bonfiglio failed to notify Teltschik that he was a respondent to the complaint or that she signed the designation form when he refused to do so.  Nor do defendants dispute that Kelley signed the Conciliation Agreement on behalf of respondents.  Defendants contend, however, that Teltschik fails to present expert testimony required to establish the applicable standard of care and breach thereof.[21]

Although the Court agrees with defendants that expert testimony most often is necessary to establish the applicable standard of care and breach thereof in legal malpractice claims, *see Footbridge Ltd. Trust v. Zhang*, 584 F. Supp. 2d 150, 158-59 (D.D.C. 2008), there is no requirement that a plaintiff  present expert testimony if the "the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *O'Neil*

---

[20]    The Court notes that neither party included Bonfiglio's signed designation of counsel form to their filings.  Teltschik attached the blank form that Bonfiglio faxed him.  Both parties agree, however, that Bonfiglio signed the form when Teltschik refused.

[21]    Teltschik does not respond to defendants' argument.

*v. Bergan*, 452 A.2d 337, 341 (D.C. 1982).  The D.C. Circuit has provided examples of conduct

that falls within the "common knowledge" exception to the need for expert testimony:

> allowing the statute of limitations to run on a client's claim; permitting entry of
> default judgment against the client; failing to instruct the client to answer
> interrogatories; failing to allege affirmative defenses; failing to file tax returns;
> failing to follow the client's explicit instructions; and billing a client for time not
> spent providing services.

*Kaempe v. Myers*, 367 F.3d 958, 966 (D.C. Cir. 2004) (internal citations omitted).

   This is a close "call."   The Court concludes, however, that the actions of Bonfiglio and

Kelley's actions are of the sort that fall within the common knowledge exception to the need for

expert testimony.  First, by signing the designation of counsel form when Teltschik explicitly

refused to do so, Bonfiglio failed to follow Teltschik's instructions.  Furthermore, Bonfiglio's

failure to tell Teltschik that he was named as a respondent in CREW's complaint is also an action

that would fall within the common knowledge exception to the need for expert testimony.

Similarly, a reasonable jury could find that Kelley's action of signing the Conciliation Agreement

on Teltschik's behalf without his express consent constituted "negligence as a matter of common

knowledge."  *See O'Neil*, 452 A.2d at 341 (D.C. 1982).  Therefore, knowledge of the standard of

care applicable to Teltschik's claims is within the province of a lay juror, and expert testimony is

not necessary to establish the standard of care here.

   **3.  Causation and Damages**

   Defendants argue that Teltschik has not provided adequate evidence to support his

assertion that defendants' alleged breach of duty was the proximate cause of his injury, or even

that he suffered any damages from the Conciliation Agreement.

27

At the outset, the Court notes that causation presents a question of fact usually reserved for the jury. *Thompson v. Shoe World, Inc.*, 569 A.2d 187, 190 (D.C. 1990) (citing *Wagshal v. District of Columbia*, 216 A.2d 172 (D.C. 1966)). Although proximate cause becomes a question of law when, based on the evidence no reasonable jury could rationally conclude that proximate cause existed, *see Washington Metro. Area Transit Auth. v. Davis*, 606 A.2d 165, 170 (D.C. 1992), such is not the case here.

Teltschik has also provided sufficient evidence of damages. While it may be true, as defendants contend, that the State Bar of Texas is barred by the statute of limitations from pursuing any disciplinary action against Teltschik for the acts and/or omissions set forth in the Conciliation Agreement, Defs.' Mot. for Summ. J. Ex. H ("Decl. and Report of Jennifer A. Hasley") ¶ 20, Teltschik produces evidence that the Conciliation Agreement has injured him in other respects. Specifically, Teltschik provides evidence that the Conciliation Agreement has caused him to lose at least two clients.[22] Consequently, defendants are not entitled to summary judgment with respect to the issues of causation and damages.

### 4.  Williams & Jensen

Finally, defendants contend that Teltschik's claims for breach of fiduciary duty and negligence against Williams & Jensen in reliance on the doctrine of respondeat superior cannot survive summary judgment because they are baseless. Teltschik rejoins that defendants are not

---

[22]    Although Teltschik also claims that he has suffered mental anguish from defendants' alleged conduct, he may not recover damages for mental anguish without proof of a physical injury. *See District of Columbia v. Smith*, 436 A.2d 1294, 1296 (D.C. 1981) ("It is generally accepted in this jurisdiction that there can be no recovery for negligently caused emotional distress, mental disturbance, or any consequence thereof, where there has been no accompanying physical injury." (citations omitted)).

entitled to summary judgment on his claims against Williams & Jensen because Bonfiglio and

Kelley were acting within the course and scope of their employment with Williams & Jensen

when they breached their duty to him.

Under the doctrine of respondeat superior, an employer may be vicariously liable for the

negligent acts of its employee if the employee's actions are within the course and scope of her

employment.  *See Schecter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 427 (D.C. 2006).

As a general rule, whether an employee committed a tort "within the scope of [ ] employment" is

"a question of fact for the jury to determine."  *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27,

31 (D.C. 1979) (quoting *Great A & P Tea Co., v. Aveilhe*, 116 A.2d 162, 164 (D.C. 1955)).  It

can, however, become a question of law "when all reasonable triers of fact must conclude that

the servant's act was independent of the master's business and solely for the servant's personal

benefit."  *Id.* at 32.

Teltschik has provided sufficient evidence for a reasonable jury to conclude that

Bonfiglio and Kelley acted within the scope of their employment with Williams & Jensen when

they engaged in the acts which underlie Teltschik's negligence and breach of fiduciary duty

claims.  All the correspondence from the FEC addressed to Teltschik was sent to Williams &

Jensen's address.  Bonfiglio and Kelley were working with ARMPAC in their capacity as

Williams & Jensen employees; Williams & Jensen represented ARMPAC and, as Williams &

Jensen attorneys, Bonfiglio and Kelley handled federal election matters for various Political

Action Committees, including ARMPAC.  Accordingly, Williams & Jensen is not entitled to

summary judgment on the ground that it may not be held liable under the doctrine of respondeat

superior.

C.      **Libel and Business Disparagement**

Defendants next argue that they are entitled to summary judgment on Teltschik's libel

and business disparagement claims on several grounds.[23]  First, defendants contend that the

Conciliation Agreement did not contain any false or defamatory statements about Teltschik in his

personal capacity; and that there is no evidence that any of the defendants made any statements,

defamatory or otherwise, about Teltschik in any capacity.  Specifically, defendants argue that

Martinez, Bonfiglio, Kelley, and Williams & Jensen did not make any of the statements in the

Conciliation Agreement and that "[t]he one and only connection to the Agreement is Kelley's

signature on it, indicating *ARMPAC's agreement*."  Defs.' Mot. for Summ. J. at 18 (emphasis in

original).  Next, defendants claim that Teltschik has not alleged or adduced proof that any

defendant "published" the Conciliation Agreement to a third-party.  Finally, defendants allege

that even if Teltschik could prove all the elements of defamation, the judicial and quasi-judicial

proceeding privilege bars his claims against Kelley.[24]

As an initial matter, the Court agrees with defendants that Teltschik's libel and business

disparagement claims, which are based on the statements contained in the Conciliation

---

[23]      Although the Court has found no cases in the District of Columbia that included a
claim for "business disparagement," other courts have found that business disparagement is
essentially the same offense as defamation except that defamation protects personal reputation
and business disparagement protects economic interests.  *See e.g., Forbes Inc. v. Granada
Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex. 2003); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749
S.W.2d 762, 766 (Tex. 1987).  Therefore, the Court will consider Teltschik's libel and business
disparagement claims together.

[24]      Defendants assert that Teltschik's claims are also barred by a fair reporting
privilege and protected interest privilege.  Because the Court finds that the judicial and quasi-
judicial proceeding privilege bars Teltschik's claims, the Court will not address whether other
privileges also apply.

Agreement, fail as to Martinez and Bonfiglio.  Teltschik has failed to provide any evidence that

either Martinez or Bonfiglio had any involvement with the preparation or execution of the

Conciliation Agreement.

As Teltschik's claims relate to Kelley, defendants argue, among other reasons, that the

claims fail because any alleged defamatory statements attributed to her are shielded by the

judicial and quasi-judicial proceeding privilege.  Defendants are correct.  The District of

Columbia "recognize[s] an absolute privilege for statements made [by an attorney] preliminary

to, or in the course of, a judicial proceeding, so long as the statements bear some relation to the

proceeding." *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.* 774 A.2d 332,

338 (D.C. 2001); *see also Arneja v. Gildar*, 541 A.2d 621, 623 (D.C. 1988) (stating that "[f]or

the absolute immunity of the privilege to apply, two requirements must be satisfied: (1) the

statement must have been made in the course of or preliminary to a judicial proceeding; and (2)

the statement must be related in some way to the underlying proceeding").  This judicial

proceedings privilege does not require an "actual outbreak of hostilities," and attaches to

statements made in settlement negotiations before a lawsuit is filed.  *Messina v. Fontana*, 260 F.

Supp. 2d 173, 178 (D.D.C. 2003) (quoting *Finkelstein*, 774 A.2d at 343); *see also Conservative

Club of Washington v. Finkelstein*, 738 F. Supp. 6, 13-14 (D.D.C. 1990).

The judicial proceedings privilege has been extended to apply to statements made in

connection with quasi-judicial proceedings conducted by administrative bodies "[w]here a

proceeding is designed to adjust the rights or liabilities of the parties before it and calls for an

exercise of guided discretion by an impartial decisionmaker." *Jones v. Mirgon*, No. 88-7001,

1989 WL 105498, at *2 (D.C. Cir. Aug. 31, 1989).  Such quasi-judicial proceedings include

31

private arbitration proceedings, *Sturdivant v. Seaboard Serv. Sys., Ltd.,* 459 A.2d 1058, 1059-60

(D.C. 1983), hearings before the Hacker's License Appeal Board, *Mazanderan v. McGranery*,

490 A.2d 180 (D.C. 1984), proceedings before the Rental Accommodations Office, *Arneja,* 541

A.2d at 623, and FCC lottery-licensing proceedings, *Jones*, 1989 WL 105498, at *2-3.  Also, as

defendants note, the privilege has been applied to statements made during the course of certain

proceedings in various federal agencies, including the Department of Employment Services, the

Equal Employment Opportunity Commission, and the Occupational Safety and Health

Administration.  *See* Def.'s Mot. for Summ. J. at 23 n.17 (citing cases).

     Teltschik's libel and business disparagement claims are based upon statements contained

in the Conciliation Agreement.  The Conciliation Agreement was negotiated between ARMPAC

and the FEC preliminary to its filing with the FEC to resolve and "conciliate" CREWS' claims of

election law violations by ARMPAC.  The activities of the FEC under the circumstances were

those of a quasi-judicial body.  *See Romero-Barcelo v. Acevedo-Vila*, 275 F. Supp. 2d 177, 184

n.1 (D.P.R. 2003) (citing 2 U.S.C. §§ 437c-438 (1994); *see also FEC v. NRA Political Victory

Fund*, 513 U.S. 88, 97 (1994); *Becker v. FEC*, 230 F.3d 381, 384 (1st Cir. 2000)).  Therefore, any

statements attributed to Kelly as a result of her signing the Conciliation Agreement on behalf of

respondents are absolutely privileged from any liability resulting from the alleged defamatory

statements contained in the Agreement.[25]  Accordingly, defendants are entitled to summary

judgment on Teltschik's libel and business disparagement claims.

---

[25]     Neither party addresses whether the privilege applies to Kelley if she signed the
Conciliation Agreement in a capacity other than as respondents' attorney.  Although Section 586
of the Restatement (Second) of Torts—the section most often quoted by District of Columbia
courts, and cited by defendants in their motion for summary judgment—refers to the absolute
privilege granted to an "attorney at law," "the privilege also applies to parties, judicial officers,
witnesses, and jurors."  *Armenian Assembly of Am, Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 140
(D.D.C. 2009) (citing *Brown v. Collins*, 402 F.2d 209, 212 & n.4 (D.C. Cir. 1968)).

**D.      Misappropriation of Name and Reputation**

Defendants move for summary judgment on Teltschik's misappropriation of name and

reputation claim on the ground that Teltschik does not present any evidence to support his claim

that defendants' improperly used his name for any commercial benefit.[26]  Defendants contend

that ARMPAC designated Teltschik as its Treasurer and the FEC named him as a respondent on

the Conciliation Agreement as a pleading custom.  Teltschik rejoins that defendants forged his

name on other "incorrect reports" that they previously filed with the FEC and that they received

compensation from ARMPAC for filing these reports.  Teltschik contends that the forging of his

signature on "incorrect reports" is an improper use of his name and that the compensation which

defendants received from ARMPAC is a commercial benefit.

The District of Columbia has adopted the definition set forth by the Restatement (Second)

of Torts § 652 for invasion-of-privacy torts, including the tort of misappropriation of name.  *See*

*Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38, 53 (D.D.C. 1999) (citing *Vassiliades*

*v. Garfinckel's*, 492 A.2d 580, 587 (D.C. 1985)).  According to the Restatement, "[o]ne who

appropriates to his own use or benefit the name or likeness of another is subject to liability to the

other for invasion of his privacy."  Restatement (Second) of Torts, § 652C (1977);  *see also*

*Walker v. Independence Fed. Sav. & Loan Ass'n*, 555 A.2d 1019, 1023 (D.C. 1989); *Tripp v.*

*United States*, 257 F. Supp. 2d 37, 40-42.  The protected interest is that of "the individual in the

exclusive use of his own identity . . . in so far as the use may be of benefit to him or to others."

Restatement (Second) of Torts § 652C cmt. a.  And while a defendant typically appropriates the

---

[26]      Defendants also argue that Teltschik's misappropriation of name and reputation
claim is barred by absolute and qualified privilege, but they cite no authority for this proposition.
Accordingly, the Court will not address this argument.  *See United States v. Wade*, 992 F. Supp.
6, 21 (D.D.C. 1997) (refusing to address an argument, briefly raised, but for which "absolutely no
legal, factual, or rhetorical support" was offered).

name or likeness of another for a commercial purpose, "the rule stated is not limited to commercial appropriation.  It applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit . . . and even though the benefit sought to be obtained is not a pecuniary one." *Id.* cmt. b.  The benefits that defendant might seek to appropriate for his own use include "the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Id.* cmt. c.

Teltschik fails to present evidence arising from any allegation or claim in his complaint that defendants used his name to obtain any advantage or benefit or to take advantage of the value associated with his name.  Instead, in responding to defendants' motion for summary judgment, Teltschik focuses on defendants' alleged filings of forged documents long before the Conciliation Agreement was even contemplated.  As discussed above, Teltschik's allegations that defendants filed documents containing his forged signature with the FEC are stricken because he failed to raise such allegations in his complaint.  Because Teltschik fails to present evidence that would support his misappropriation of name and reputation claim, defendants are entitled to summary judgment as to this claim.

**E.     Tortious Interference with Contracts and Tortious Interference with Prospective Economic Advantage**

Defendants argue that Teltschik's tortious interference with contracts and tortious interference with prospective economic advantage claims are meritless because Teltschik has failed to show that a contract existed or that he had a prospective advantageous business transaction.  In a mere three sentences, Teltschik rejoins that Bonfiglio usurped the office of Treasurer by filing reports with the FEC that show herself to be Treasurer, thereby interfering with his relationship with ARMPAC.

34

In the District of Columbia, a tortious interference with contract claim has four required elements: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach." *Casco Marina Dev., L.L.C. v. District of Columbia Redevelopment Land Agency,* 834 A.2d 77, 83 (D.C. 2003) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 309 (D.C. 2000)).  A tortious interference with prospective economic advantage claim has identical elements, except that the plaintiff must demonstrate the existence, knowledge, and intentional procurement of a breach of a prospective advantageous business transaction instead of meeting those elements as to a contract.  *Casco*, 834 A.2d at 84; *see also Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986) ("The tort of intentional interference with a prospective business advantage runs parallel to that for interference with existing contracts.") (internal citation and quotation marks omitted).

Teltschik fails to support his claim.  He does not present evidence or even allege that a contract existed, that defendants knew about any existing contract, that a breach of contract occurred, or that damages resulted from a breach of contract.  Similarly, he does not present evidence or even allege any facts that would support the existence of a prospective advantageous business transaction, that defendants knew of the transaction, or that defendants interfered with the transaction.  Because Teltschik fails to present evidence on the basis of which a jury could find in his favor on his tortious interference with contracts and tortious interference with prospective economic advantage claims, defendants are entitled to summary judgment on these claims.

**F.     Punitive Damages**

Finally, defendants contend that they are entitled to summary judgment on Teltschik's claim for punitive damages because he has not presented any evidence suggesting that they acted with or harbored any malice against him.  Teltschik rejoins that he does not have to show actual malice to recover punitive damages because "the state interest [of providing remedies for defamation] adequately supports awards of presumed and punitive damages—even absent a showing of 'actual malice'" Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. for Summ. J. at 26.

As a general matter, courts do not favor punitive damages.  *See Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982).  The purpose of awarding punitive damages is to punish an individual for outrageous conduct which is malicious, wanton, reckless, or in willful disregard of another's rights.  *Id.*  Therefore, to recover punitive damages, it is not enough to show that defendants acted with intent.  *See District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 726.  Instead, the plaintiff must "prove . . . by clear and convincing evidence that [defendant acted with] . . . a state of mind evincing malice or its equivalent."  *Daka, Inc. v. McCrae*, 839 A.2d 682, 695 n.14 (D.C. 2003).  Because Teltschik has not even alleged that the defendants acted with malice or its equivalent, his claim for punitive damages fails.  And, because defendants are entitled to summary judgment on Teltschik's defamation claim, Teltschik cannot recover punitive damages even if he is correct that a plaintiff who prevails on a claim of defamation is not required to make a showing of malice in order to recover  such damages.

### III.  CONCLUSION

For the foregoing reasons, it is this 12th day of February 2010 hereby

**ORDERED** that defendants' motion to strike [# 53] is **GRANTED** as to allegations defendants have numbered 1, 2, 3, 4 and 5, and **DENIED** as to allegation 6; and it is further

**ORDERED** that Teltschik's motion to amend his complaint [#52] is **DENIED**; and it is further

**ORDERED** that Teltschik's motion to strike [#50] is **DENIED** as to Bonfiglio's original declaration and **DENIED** as moot as to Bonfiglio's supplemental declaration; and it is further

**ORDERED** that defendants' motion for summary judgment [#39] is **GRANTED** as to defendant Martinez with respect to Teltschik's claims of negligence and breach of fiduciary duty and **DENIED** as to defendants Bonfiglio, Kelley, and Williams & Jensen; and it is further

**ORDERED** that defendants' motion for summary judgment [#39] is **GRANTED** as to all defendants with respect to Teltschik's claims of libel, business disparagement, misappropriation of name and reputation, tortious interference with contracts, tortious interference with prospective economic advantage, and for punitive damages.

Henry H. Kennedy, Jr.
United States District Judge